## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **RICHARD M. ANDERSON,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHELLE LUJAN GRISHAM,** | § | |
| **In her official capacity as** | § | |
| **Governor of New Mexico** | § | **Hon.** |
| | § | |
| **And** | § | |
| | § | |
| **PATRICK M. ALLEN** | § | |
| **In his official capacity as** | § | |
| **Secretary of New Mexico Department** | § | |
| **Of Health** | § | |
| *Defendants* | § | |

---

### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

NOW COMES RICHARD ANDERSON, Plaintiff, and hereby moves pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction prohibiting Defendants MICHELLE LUJAN GRISHAM ("Governor Grisham") and PATRICK M. ALLEN ("Secretary Allen") from enforcing Executive Orders 2023-130 and 2023-132 as an unconstitutional suspension of the United States Constitution, Second Amendment and New Mexico Article II, Section 6 right to keep and bear arm defense of self and state until this Court has an opportunity to issue a final judgment on the merits. The orders

themselves violate New Mexico law and exceed the statutory authority granted to the Executive by the Legislature.

Plaintiff make this motion for a preliminary injunction on the grounds that (1) Plaintiff has demonstrated a likelihood of succeeding on the merits of his claim; (2) Plaintiff is likely to suffer irreparable harm in the absence of the relief requested; (3) the harm Plaintiff is likely to suffer if the preliminary injunction is denied outweighs the harm that Defendants are likely to suffer as a result of the preliminary injunction; and (4) the public interest favors issuing the preliminary injunction.

Therefore, Plaintiff hereby respectfully moves this Court to enter a temporary restraining order enjoining enforcement of the prohibition on lawful carry pending a hearing on the merits.

## FACTUAL BACKGROUND

1. On September 7, 2023, Governor Grisham issued Executive Order 2023-130, *DECLARING STATE OF PUBLIC HEALTH EMERGENCY DUE TO GUN VIOLENCE*. Exhibit A. The Order claims that a "state of emergency" is imposed due to the existence of something called "gun violence" in New Mexico.

2. The following day, on September 8, 2023, Secretary Allen invoked the Governor's order to issue "*Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures*" (hereinafter "the Order") that mandated "no person, other than a law enforcement officer or licensed security officer, shall possess a firearm…either openly or concealed, within cities or

counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from July 2022 to June 2023 according to the New Mexico Department of Public Health." Exhibit B.

3.      On September 13, 2023, U.S. District Court Judge David Urias declared that the order violated the constitutional rights of citizens to keep and bear arms outside the home for self-defense.

4.      On September 15, 2023, Secretary Allen amended his order to prohibit the carrying of any firearm for self-defense "in public parks and playgrounds, or other public area provided for children to play in."

5.      The Order effectively prohibits any lawful carry by any residents and citizens outside the home except law enforcement and armed security in the most populous city in New Mexico, Albuquerque, and Bernalillo County while these citizens are enjoying family time with their children.

6.      The order declares that parents have no right to protect themselves or their children when they visit public parks or playgrounds.

7.      Since criminals do not follow the law, the order places families in greater danger of being targeted for criminal activity, injury, or even death because criminals will know that family members are incapable of defending themselves in these crime-spree zones.

8.      Plaintiff is a law-abiding adult citizen who lives in the City of Albuqueque,

Bernalillo County.  He is a disabled, Vietnam-era veteran who served his country as a commissioned officer in the United States Air Force and took an oath to "support and defend the Constitution of the United States against all enemies, foreign and domestic."[1] He carries a firearm regularly for self-defense and other lawful purposes while traveling and conducting his day-to-day business.  Because of the Order, Plaintiff is precluded from exercising his fundamental rights enshrined within both the New Mexico and United Constitution to keep and bear arms in defense of self, state, and others.

9.      Defendant Grisham is the elected Governor of the State of New Mexico. This action is brought against her in her official capacity.

10.      Defendant Allen is the Secretary of New Mexico's Department of Public Health. This action is brought against him in his official capacity.

11.      Defendants are prohibited from violating the rights of those under their governance and required to enforce the laws as duly passed by the Legislature. Unfortunately, Defendants are abusing their authority under color of law by enforcing and will continue to enforce unconstitutional edicts that disarm the peacefully and lawfully armed Plaintiff and others in violation of 42 U.S.C. § 1983.

12.      Finally, Defendants have no authority under the Public Health Emergency Response Act[2] to issue the executive order as written in the first place.

---

[1] United States Air Force Commissioned Officer Oath of Office: "I [*state your full name*], having been appointed a (*rank*) in the United States Air Force, do solemnly swear (*or affirm*) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office upon which I am about to enter. So help me God (*optional*)."
[2] NM Stat § 12-10A-1 to 12-10A-19 1978.

## LEGAL STANDARDS

**I.      Legal Standard for a Temporary Restraining Order**

13.      The Supreme Court's decision in *Winter v. NRDC* can be said to provide

an exacting standard for the grant of TROs and preliminary injunctions. *See Winter v.*

*Natural Resources Defense Council*, 555 U.S. 7 (2008).  Per *Winter*, a plaintiff seeking a

preliminary injunction "must establish that he is likely to succeed on the merits, that he is

likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Id.*, at 20.[3]

**A.      PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS**

**a.      SECOND AMENDMENT CLAIMS**

14.      The constitutional right to bear arms in public for self-defense is not "a

second-class right, subject to an entirely different body of rules than the other Bill of

Rights guarantees." *McDonald v. Chicago*, 561 U. S. 742, 780 (plurality opinion).  In the

recent *Bruen* case, the Supreme Court laid out the test that courts need apply when

determining whether a Second Amendment right is implicated.  The two-part test holds

that "when the Second Amendment's plain text covers an individual's conduct, the

Constitution presumptively protects that conduct."  Then, to justify its regulation, "the

government must demonstrate that the regulation is consistent with this Nation's

historical tradition of firearm regulation."  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142

S. Ct. 2111, 2126 (2022).

---

[3] *See also Munaf v. Geren*, 553 U.S. 674, 689-690, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982); *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018).

**b.**     **STEP ONE: THE SECOND AMENDMENT'S PLAIN TEXT COVERS PLAINTIFF'S CONDUCT**

15.     Plaintiff carries a handgun in public for self-defense and other lawful purposes.  "[T]he Amendment's core generally covers carrying in public for self-defense." *Wrenn v. District of Columbia*, 864 F.3d 650, 659 (D.C. Ct. of App 2017). When deciding whether the plaint text of the Second Amendment protects Plaintiff's carrying of a handgun in public for self-defense, the Supreme Court had "little difficulty concluding that it does." *Bruen,* 142 S. Ct., at 2134.  The Second Amendment's plain text clearly covers Plaintiff's conduct and the first step of the *Bruen* analysis is complete.

16.     While not necessary in determining Second Amendment rights, New Mexico's Constitution likewise protects the right of citizens to keep and bear arms.  "The People have the right to bear arms for their security and defense."  N.M. Const. Art. II, § 6.  The New Mexico Court of Appeals has repeatedly struck down ordinances attempting to violate this fundamental right.[4]

17.     The Order clearly and blatantly violates the right of Plaintiff to keep and bear arms for lawful purposes, most notably self-defense and defense of his family, in violation of Article II, Section 6, of the New Mexico Constitution and the Second Amendment of the United States Constitution.  The Order also violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

---

[4] *City of Las Vegas v. Moberg*, 82 N.M. 626 (Ct. of App. 1971). *See also State v. Rosenthal,* 75 Vt. 295 (1903); and *see In re Brickey, 8 Idaho* 597, 70 P. 609 (1902); *State v. Woodward*, 58 Idaho 385, 74 P.2d 92 (1937); *State v. Kerner*, 181 N.C. 574, 107 S.E. 222 (1921).

262df9fff882354e

### c. STEP TWO: THE GOVERNMENT CANNOT DEMONSTRATE THAT THE ORDER IS CONSISTENT WITH HISTORICAL TRADITION OF FIREARM REGULATION

18.     While a total prohibition on personal carry in public parks and places where children may play is only *presumptively* unconstitutional under the *Bruen* test, the Order could be saved if it can prove that preventing people from being able to defend themselves from the very violence the Order purports to protect is "consistent with the Nation's historical tradition of firearm regulation."  There can be no doubt that it is not.

19.     The Order prohibits Plaintiff from possessing a firearm for self-defense and lawful purposes in public parks, playgrounds, or "other public area provided for children to play in" at time when Governor Grisham claims that "New Mexico has some of the highest rates of gun violence in the nation" and that "gun-related deaths and injuries have resulted in devastating physical and emotional consequences."  In other words, at a time when New Mexico citizens are most likely to need the ability to defend themselves in public, Governor Grisham and Secretary Allen are attempting to disarm them and make them defenseless victims, allowing for the wholesale slaughter of children at the hands of bad actors before their parents' very eyes.

20.     The idea that a person could stand on a public sidewalk or across the street from such places being legally armed under Governor Grisham's Orwellian order while children are openly frolicking and gleefully enjoying their childhood in blissful ignorance that the magical perimeter of the park will somehow protect them is absurd at best and would be incredibly laughable if this were not such a serious issue.

21.     At no time in history have government officials responded to violence by

declaring public parks, playgrounds, and places where kids play as ignorantly labeled "gun free zones." Defendants cannot point to a single instance in time where this has occurred. Governor Grisham's and Secretary Allen's prohibitions are clearly inconsistent with the Nation's historical tradition of firearm regulation.

22.     *Bruen* unequivocally identified the public's right to keep and bear arms in public. New York tried to defend its position that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a non-speculative need for armed self-defense in those areas," similar to how the Defendants are attempting to justify their position. The *Bruen* Court held that "the history reveals a consensus that States could not ban public carry altogether" in places frequented by the general public as Defendants are here. *Bruen*, 142 S. Ct., at 2146.

23.     New York failed to meet its "proper cause" burden in *Bruen*'s second step analysis. Surely, New Mexico's blanket prohibition based solely on the presence of children must fail for going even further than New York by not even requiring a showing of "proper cause."

### d.  GOVERNOR GRISHAM HAS NO STATUTORY AUTHORITY TO ISSUE THE EXECUTIVE ORDER

24.     Governor Grisham's Executive order invokes both the Public Health Emergency Response Act (PHER) and the All Hazard Emergency Management Act (AHEMA) as the basis for her authority.

### A.     PHER

25.     PHER was passed to 1) provide the state of New Mexico with the ability to manage public health emergencies in a manner that protects civil rights and the liberties

of individual persons; 2) prepare for a public health emergency; and 3) provide access to appropriate care, if needed, for an indefinite number of infected, exposed or endangered people in the event of a public health emergency.[5]

26.    PHER specifically defines "public health emergency" as "the occurrence or imminent threat of exposure to an extremely dangerous condition or a highly infectious or toxic agent, including a threatening communicable disease."[6]  The Act is silent on the authority of Governor Grisham to regulate the wearing of arms in defense of self and others due to so-called "gun violence."  Had the governor this authority, she would be able to ban swimming pools because New Mexico has one of the highest rates of drowning in the country.

27.    Regardless of the other factors or numbers, even if the rates of "gun violence" were twice as high, PHER does not apply to the declaration of a public health emergency.  Besides, suicides comprise 65% of the so-called "gun violence" in New Mexico.[7]  Governor Grisham's order prohibiting guns in parks, playgrounds, and areas where children play is not directly targeted at or limited to the main source of the "problem" even if she were authorized to declare such an emergency.

## B.    AHEMA

28.    AHEMA was passed, *inter alia*,  to "provide an emergency operations plan for the protection of life and property adequate to cope with disasters resulting from acts of war or sabotage or from natural or man-made causes other than acts of war" and

---

[5] N.M. Stat. Ann. § 12-10A-2. Purposes of Act.
[6] N.M. Stat. Ann. § 12-10A-3. Definitions.
[7] Gun deaths: CDC, WONDER, five-year average: 2015-2019.

"provide for assistance and care for persons displaced, left homeless or otherwise victims of disaster or war conditions."[8]

29.    AHEMA confers powers to the governor "in the event of any man-made or natural disaster causing or threatening widespread physical or economic harm that is beyond local control and requiring the resources of the state" and to issue, amend or rescind the necessary orders, rules and procedures to carry out the provisions" of the Act.[9]

30.    AHEMA gives Governor Grisham the power, by proclamation, to prohibit "the possession of firearms or any other deadly weapon by a person in any place other than his place of residence or business, except for peace officers."  However, that section only applies to an emergency declaration under the Riot Control Act and "upon request of the mayor of a municipality or the sheriff of a county or a majority of the members of the governing body of the municipality or county having jurisdiction."[10]

31.    Governor Grisham does have the authority to prohibit firearms anywhere based on AHEMA.

### e.   Plaintiffs will succeed on the merits

32.     There can be no doubt that Plaintiffs' conduct is both presumptively protected under the New Mexico and Federal Constitutions, but there is no way in our Constitutional Republic that Defendants' Orders are consistent with the Nation's historical traditions of firearms regulation.  In fact, Defendants devolve the State of New Mexico into an autocratic dictatorship where tyrants can wave their hand and proclaim

---

[8] N.M. Stat. Ann. § 12-10-2. Purpose.
[9] N.M. Stat. Ann. § 12-10-4. All hazard emergency management; powers of the governor.
[10] N.M. Stat. Ann. § 12-10-17 to 12-10-18. Proclamation of Emergency.

the electorate nothing more than slaves reliant on their government masters for protection from the very violence for which Defendants have failed to prevent.

### B.  PLAINTIFF HAS SUFFERED IRREPARABLE HARM

33.      Plaintiff has established that he will prevail on the merits of his constitutional claim.  The loss of freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for purposes of granting a preliminary injunction.  *See Elrod v. Burns*, 96 S. Ct. 2673, 2689 (1976).[11]  While the *Elrod* case regarded First Amendment protected speech, "the same holds true for Second Amendment freedoms."  *Fraser v. BATFE*, No. 3:22-cv-410, 2023 U.S. Dis. LEXIS 154088, at *10 (E.D. Va. Aug. 30, 2023).  A finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional."  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Finally, "[w]hen an alleged deprivation of a constitutional right is involved, ... most courts hold that no further showing of irreparable injury is necessary."  *Baird v. Bonta*, No. 23-15016, 2023 U.S. App. LEXIS 23760, at *10 (9th Cir. 2023).

### C.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OF AN INJUNCTION

34.      When the Government is the opposing party in a suit such as this, the balance of equities and public interest factors merge.  *Nken v. Holder*, 556 U.S. 418, 436 (2009).  Defendants suggest that in order to enjoy the benefits of police or government protection from the alleged threats of so-called "gun violence," Plaintiff must surrender his rights.  "When the constitutional rights of an individual and other members of the

---

[11] *See also de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir., 2012).

public are violated, or are threatened to be violated, public interest concerns are implicated because all citizens have a stake in upholding the Constitution." *Herrera v. Santa Fe Pub. Sch.*, 792 F.Supp.2d 1174, 1199 (D.N.M. 2011). "Government cannot condition the receipt of a benefit or privilege on the relinquishment of a constitutional right." *Id.*, at 1183.

35.     Defendants' Orders argue that the only way to solve the crime problem is to ban guns in places hardest hit by…guns.  In other words, Defendants posit that there is a government interest in disarming potential victims to make those victims safer from violent criminals and magically prevent further violent crimes.  Nothing in the order targets the criminals engaged in criminal activity.  Criminals will continue their dastardly acts with or without the Orders.  The only people that are affected are potential victims and law-abiding citizens like Plaintiff.  Regardless of the impact, *Bruen* "declined to engage in means-end scrutiny because '[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Bruen*, 142 S. Ct. at 2129 (quoting *District of Columbia v. Heller*, 554 U. S. 570, 634 (2008)).

36.     The public interest will be served by injunction because the People have a right to keep and bear arms in self-defense.  Constitutionally protected rights are the bedrock of this country and to allow for its incremental destruction because of political incompetence and improper focus on the root causes of violence would result in statist despotism unseen since this country ridded itself of King George's oligarchical tyranny.

## II.     A Bond is Unnecessary

37.     Rule 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." The Tenth Circuit has stated that the trial court has "wide discretion" in setting the amount of the preliminary injunction bond. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001) (quoting *Cont'l Oil Co. v. Frontier Ref. Co.*, 338 F.2d 780, 783 (10th Cir. 1964)).  This preliminary injunction enforces fundamental constitutional rights against the government. Waiving the security requirement best accomplishes the purposes of Rule 65(c). *United Utah Party v. Cox*, 268 F.Supp.3d 1227, 1260 (D. Utah 2017).  Plaintiffs respectfully request that no bond requirement be imposed.

## CONCLUSION

38.     For the foregoing reasons, this Court should grant the injunctive relief Plaintiff requests to enjoin enforcement of Defendants' unconstitutional prohibitions on constitutionally protected rights, allow for the waiver of bond, and order such further relief as this Court deems appropriate upon a hearing on the merits.

 Dated: September 26, 2023

                                        Respectfully Submitted,

                                        */s/ Joseph Lee Woods*
                                        Joseph Lee Woods
                                        Law Office of Joseph L. Woods, LLC
                                        500 Marquette Ave. NW, Suite 1200
                                        Albuquerque, NM 87102
                                        T: (866) 855-1195
                                        F: (866) 855-1198
                                        joseph@woodsinjurylaw.com

*/s/ CJ Grisham*
CJ Grisham*
Law Offices of CJ Grisham
TX Bar no. 24124533
3809 S. General Bruce Dr.
Ste 103-101
Temple, Texas 76502
Ph: 254-405-1726
Email: cj@cjgrisham.com
*Pro hoc vice request forthcoming

*Attorneys for Plaintiff*