**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

RICHARD M. ANDERSON,
Plaintiff,


vs.                                                    No. 1:23-CV-00839-DHU-LF


MICHELLE LUJAN GRISHAM, *in her*
*official capacity only,*
PATRICK M. ALLEN, *in his official capacity only,*
Defendants.


<u>**ORDER DENYING TEMPORARY RESTRAINING ORDER**</u>[1]

      Plaintiff, Richard M. Anderson, an individual gun owner, has moved for a temporary restraining order ("TRO") pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure. He seeks to enjoin enforcement of the New Mexico Department of Health's "Amended Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures," ("Amended Order") issued on September 15, 2023. For the reasons stated below, the Court will deny Plaintiff's request.

**BACKGROUND**

      On September 7, 2023, responding to a rise in mass shootings and gun-related deaths, and in particular the death of three children, New Mexico Governor Michelle Lujan Grisham ("the Governor") issued Executive Order 2023-130 ("EO") declaring a state of public health emergency "of unknown duration" due to gun violence. Exec. Order No. 2023-130, (Sept. 07, 2023). The

---

[1] Plaintiff filed a Motion for Preliminary Injunction, Doc. 1-1, and within that motion requests a temporary restraining order.  It is this request the Court addresses in this Order.

Governor's EO directed the New Mexico State Departments of Public Health, Homeland Security and Emergency Management, and Public Safety to collaborate with the Governor's officer to provide a coordinated response to implement the EO.

The following day, on September 8, 2023, New Mexico Department of Health Secretary Patrick M. Allen ("Secretary Allen") issued a "Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures" ("PHO") pursuant to his authority to preserve and promote public health and safety. PHO (N.M. Dep't of Health Sept. 8, 2023).

Among other prohibitions in the PHO, Section (1) restricted open or concealed possession of a firearm by any person, other than by a law enforcement officer or licensed security officer, "within cities or counties averaging 1,000 or more violent crimes per 100,000 residents per year since 2021 according to [the] Federal Bureau of Investigation's Uniform Crime Reporting Program AND more than 90 firearm-related emergency department visits per 100,000 residents from June 2022 to June 2023 according to" the Public Health Department. *Id*. at § 1(A). Section (4) of the PHO further prohibited the possession of a firearm on "state property, public schools, and public parks" unless the person carrying the firearm is a law enforcement officer or licensed security officer. *Id*. at § 4.

The PHO contained certain exceptions on the blanket prohibition of possessing firearms depending on who the person is and where the firearm is possessed. As noted, Section (1) of the PHO did not apply to "a law enforcement officer or licensed security officer." *Id.* at § 1. The PHO also exempted possessing a firearm while on private property and firearm possession while at a licensed firearm dealer or gunsmith, possession for use at a licensed firing range or sport shooting competition, or possession of a firearm while traveling to designated locations, provided that the

firearm is appropriately locked and secured rendering it inoperable. *See id*. § 1(A)-(E). Willful noncompliance with the PHO subjects "[a]ny person or entity" to "civil administrative penalties available at law." *Id.* at § 4.

On September 9, 2023, five sets of plaintiffs[2] ("First Set of Plaintiffs") moved for a temporary restraining order and sought to enjoin enforcement of certain provisions of the PHO which restricted the possession of firearms. The First Set of Plaintiffs asserted that the firearm restrictions were clearly unconstitutional in that any such restrictions on their ability to possess firearms in public, either openly or concealed, violates the Second Amendment of the United States Constitution.

On September 13th, 2023, the Court heard arguments from the First Set of Plaintiffs and the Defendants (who are the same Defendants as in the case at bar). Following that hearing, the Court found that the First Set of Plaintiffs had met their burden in proving the necessity of a TRO and the Court issued an Order temporarily enjoining the enforcement of certain provisions of the Public Health Order. These provisions were Sections 1 and 4. On September 15, 2023, the Defendants issued the Amended Order which eliminated the restriction of public firearm carrying in Albuquerque but instead prohibited "the carrying of any firearm for self-defense 'in public parks and playgrounds, or other public areas provided for children to play in.'" Pl.'s Mot. at 2.

On September 26, 2023, Plaintiff in the instant case filed a motion for a Temporary Restraining Order and Preliminary Injunction, against the Amended Order.  Plaintiff asserts that he is a law-abiding citizen who lives within the City of Albuquerque who regularly carries a firearm for self-defense and other lawful purposes.

---

[2] These five sets of Plaintiffs attended the same hearing and were issued the same TRO. Their case numbers are as follows: 1:23-cv-00771-DHU-LF, 1:23-cv-00772-DHU-LF, 1:23-cv-00773-DHU-LF, 1:23-cv-00774-DHU-LF, 1:23-cv-00778-DHU-LF.

**DISCUSSION**

1. **Plaintiff's Request for a Temporary Restraining Order as it Pertains to the Public Parks Provision of the Amended Order Is Denied Because It Would Be Superfluous.**

The Court previously enjoined the enforcement of the original PHO as it pertained to public parks. In the September 13, 2012 hearing, the Court enjoined "Section (1) of the New Mexico Department of Health's 'Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures' ("PHO") published on September 8, 2023…[and] Section (4) of the New Mexico Department of Health's 'Public Health Emergency Order Imposing Temporary Firearm Restrictions, Drug Monitoring and Other Public Safety Measures' to the extent it imposes additional restrictions on the carrying or possession of firearms that were not already in place prior to its issuance." *See Temporary Restraining Order*, No. 1:23-cv-00773, Doc. 11 at 11. The exact language of Section 4 was as follows: "no person other than a law enforcement officer or a licensed security officer, shall possess a firearm on state property, public schools, or public parks." PHO at 2. The prohibition of guns in public parks was not in place prior to the issuance of the original PHO which means that this Court enjoined enforcement of the order in public parks on September 13, 2023.  There is no risk that the Amended Order can or would overrule this Court's September 13, 2023, TRO.  If the Court were to issue another TRO restraining the enforcement of the Amended Order as it pertains to public parks it would be superfluous and necessary.

2.   **The Request to Enjoin the Amended PHO as It Pertains to Playgrounds and "Other Areas for Children to Play In" Is Denied Because Plaintiff Has Failed to Demonstrate There Is a Substantial Likelihood He Will Succeed On the Merits of His Claim at This Stage in the Litigation.**

For Plaintiff to succeed in his petition for a TRO, he must prove that "(1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that he will eventually prevail on the merits." *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). "The likelihood-of-success and irreparable-harm factors are 'the most critical' in the analysis." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd*., 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

The Court focuses on the fourth factor of the analysis because it is where Plaintiff fails to meet his burden. In particular, Plaintiff is unable to provide any support for his contention that *New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. 2111, 2134 (2022) or other Second Amendment jurisprudence unquestionably bars laws which restrict the carrying or possession of firearms on public playgrounds or places where children play. The Supreme Court of the United States has found that there are some legitimate "sensitive places" in which it would be permissible under the Second Amendment to restrict the usage of firearms in public. *D.C. v. Heller*, 554 U.S. 570, 626–27 (2008)("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places *such as schools and government buildings*, or laws imposing conditions and qualifications on the commercial sale of arms")(emphasis added). This was reinforced by *Bruen's* holding: "Although the historical record yields relatively few 18th-

and 19th-century 'sensitive places' where weapons were altogether prohibited—*e.g.,* legislative assemblies, polling places, and courthouses—we are also aware of no disputes regarding the lawfulness of such prohibitions… We therefore can assume it settled that these locations were 'sensitive places' where arms carrying could be prohibited consistent with the Second Amendment. And courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." *Bruen*, 142 S. Ct. at 2133.

Accepting the Supreme Court's invitation, this Court finds that it is possible that playgrounds could be subsumed into the school's sensitive places doctrine. This logic has been adopted by other courts examining the issue post-*Bruen.*  In *Siegel v. Platkin*, for instance, a federal district court in New Jersey evaluated whether a TRO was appropriate against a gun restriction that is substantially similar to the one this Court is tasked with evaluating. The *Seigel* court found that "schools and playgrounds intersect, that is, playgrounds fall within the sphere of schools. Therefore, under *Bruen*, the Court 'can assume it settled' that playgrounds are a 'sensitive place.'" *Siegel v. Platkin*, No. CV 22-7464 (RMB/AMD), 2023 WL 1103676, at *10 (D.N.J. Jan. 30, 2023) (quoting *Bruen*, 142 S.Ct. at 2133); *see also Antonyuk v. Hochul*, 639 F.Supp.3d 232, 324 (N.D.N.Y. 2022), reconsideration denied sub nom, *Antonyuk v. Negrelli*, No. 122CV0986GTSCFH, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022) (declining to preliminarily enjoin New York's gun law ban on carrying firearms at public playgrounds).

Plaintiff provides case law and a historical analysis related to the usage of guns in parks but does not provide any evidence for their contention that bans in playgrounds or places that children play are unconstitutional.  The most relevant case Plaintiff cites is *Wolford v. Lopez*, No. CV 23-00265 LEK-WRP, 2023 WL 5043805 (D. Haw. Aug. 8, 2023). However, the court in

*Wolford* never conducted an analysis of playgrounds in relation to the *Bruen* and *Heller* mandates. In fact, the *Wolford* court did *not* enjoin the ban of guns in playgrounds when it enjoined the ban as it pertained to public parks and beaches.

The only other argument Plaintiff asserts is that the Public Health Emergency Response Act (PHER) and the All Hazard Emergency Management Act (AHEMA) do not give the Governor the authority to issue this PHO. However, other than his interpretation of the plain text of the statutes, Plaintiff provides no supporting case law or other legal authority in support of his claim. It would be entirely inappropriate for this Court to issue a TRO based on this argument without further briefing regarding the merits of this claim.

Given the mandate of *Bruen,* and the post-*Bruen* decisions analyzing the restriction of firearms in playgrounds, Plaintiff is unable to show a substantial likelihood of success on the merits on his constitutional challenge to the Governor's Amended Order as it relates to public playgrounds and "other areas for children to play."  His request for a Temporary Restraining Order must therefore be denied.

## CONCLUSION

For the reasons explained herein, Plaintiff's Motion for a Temporary Restraining Order pursuant to Rule 65(b)(1) of the Federal Rules of Civil Procedure [Doc. No. 1] is **DENIED**.

_____
DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE